**AFFIRM; and Opinion Filed April 5, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00090-CR**

**No. 05-12-00091-CR**

**ROD LEONARD GREER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 199-81410-10 and 416-82349-10**

## OPINION

Before Justices Moseley, O'Neill, and Lewis
Opinion by Justice Lewis

Appellant Rod Leonard Greer was charged by indictment with two counts of possession of cocaine with intent to deliver in an amount more than one gram but less than four grams. Greer pleaded guilty to both indictments, and his punishment was assessed at eight years' confinement in each case. The trial court probated the sentences and imposed conditions of community supervision. In three appellate issues, Greer contends: (1) his January 2010 arrest was dependent upon an unreasonable detention; (2) his May 2010 arrest was made under a warrant tainted by the illegal January detention; and (3) the May 2010 search of his vehicle was

made pursuant to an invalid inventory search.  We affirm the trial court's judgments in both cases.[1]

## Background

Greer's issues on appeal grow out of two discrete interactions with the McKinney police: one in January of 2010 and one in May of 2010.

### *The January 2010 Detention and Arrest*

In early 2010, Sergeant Woodruff worked in the narcotics division of the McKinney Police Department.  Woodruff received a tip from a resident of a high-drug-activity neighborhood in McKinney.  The unidentified person told Woodruff that a man named Rod Greer drove a white Ford pickup truck and was selling drugs on Gerrish Street.  The informant pointed to a particular house on Gerrish that was purportedly the drug house.

On January 19, Woodruff was stopped at the intersection of Gerrish and Maples when he saw a white Ford pickup turn on to Gerrish without signaling 100 feet before the turn.  Woodruff made a u-turn to stop the truck, which was driven by Greer.  Before Woodruff turned his overhead lights on, Greer pulled into the driveway of a vacant house.  The house had a sign in the front yard indicating it was for sale or rent.  Woodruff pulled in behind Greer.  Greer got out of the truck, locked it, and walked toward Woodruff; they met approximately half-way to the officer's car.

The parties agree that Woodruff detained Greer for approximately forty to forty-five minutes following the traffic stop.  Woodruff took Greer's driver's license and talked to Greer about why he stopped at the vacant house.  Greer said he was looking for a house for his mother. After five or six minutes, Woodruff told Greer he had information Greer was dealing drugs in

---

[1] Trial court case number 199-81410-10 addressed the events surrounding Greer's January 2010 arrest.  That case is the subject of our appellate case number 05-12-00090-CR.  The events surrounding Greer's May 2010 arrest were addressed in trial court case number 416-82349-10, which is our appellate case number 05-12-00091-CR.

that neighborhood. Woodruff checked and determined Greer had no warrants outstanding. Woodruff asked for Greer's consent to search him: Greer consented, but the search turned up nothing. Woodruff then asked for consent to search Greer's truck: Greer said no. Approximately ten minutes in to the detention, Woodruff requested a K-9 officer. After about twenty-five minutes, the officer arrived with the dog. Within five minutes of arriving at the scene of the stop, the dog performed an "outside sniff" and alerted. Woodruff searched the truck and found drugs in the console.

Woodruff arrested Greer, but Woodruff dropped the charges when Greer agreed to become an informant for Woodruff. When Greer failed to keep that agreement, Woodruff issued an arrest warrant for him.

*The May 2010 Arrest*

Officer John Lane had a photograph of Greer and had been told by Woodruff about the arrest warrant. Lane was on patrol on May 15 and saw Greer driving his white pickup. Lane pulled Greer over, and Greer got out of his truck and walked toward Lane. Lane handcuffed Greer and put him in the police car.

Lane then began an inventory search of the truck. When Lane opened the unlocked door he smelled fresh (unburned) marijuana. He requested a K-9 officer, whose dog alerted on a locked briefcase in the truck. Lane seized the brief case and delivered it to Woodruff at the police station. At the station Woodruff told Greer he was going to get a search warrant for the case; Greer told Woodruff the case "only" contained marijuana. Following that admission, the officers opened the case and found marijuana and cocaine inside.

*The Motion to Suppress*

Greer filed, and the trial court heard, his motion to suppress. He alleged the January detention did not comply with the requirement that the scope of a detention "must be 'strictly

–3–

tied to and justified by' the circumstances which rendered its initiation permissible." *Terry v. Ohio*, 392 U.S. 1, 19 (1968).  Other issues were argued at the hearing, but the trial court asked for further briefing on the question of whether the detention was reasonable given (a) the only suspicion Woodruff had was from the anonymous informant, and (b) Greer was detained twenty-five minutes while they waited for the dog.  At a second hearing, after the parties submitted briefs, the trial court overruled the motion to suppress.  Greer subsequently pleaded guilty.  His punishment was assessed at eight years' confinement, probated.

### Standard of Review

When reviewing a trial judge's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the trial judge's ruling.  *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012).  We afford the trial judge's determination of historical facts almost total deference, and we afford the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id.* (quoting *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011)).  Likewise, when a trial judge's ruling on mixed questions of law and fact depend upon an evaluation of credibility or demeanor, we afford the ruling almost total deference.  *Gonzales*, 369 S.W.3d at 854.  However, when mixed questions of law and fact do *not* depend on evaluation of credibility and demeanor, or when the questions are purely legal, we review the trial judge's rulings de novo.  *Id.*

The question of whether a specific search or seizure is "reasonable" under the Fourth Amendment is subject to de novo review.  *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).  We measure Fourth Amendment reasonableness in objective terms, examining the totality of the circumstances.  *Id.* at 63.

### The May 2010 Detention

Greer challenges the reasonableness of the May 2010 detention in both cases on appeal. Specifically, he challenges the trial court's ruling that he was lawfully detained after the conclusion of the initial investigation of the traffic stop. Greer contends Woodruff lacked the reasonable suspicion required for the extended detention in this case.

The Fourth Amendment requires that a warrantless detention of a suspect be justified by a reasonable suspicion. *Terry*, 392 U.S. at 21–22; *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). An investigative detention contemplated by *Terry* allows the police to question a suspicious person respecting his identity, his reason for being in the area or location, and to make similar reasonable inquiries of a truly investigatory nature. *Amores v. State*, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991). An officer may demand identification, a valid driver's license, and proof of insurance from the driver, and he may check for outstanding warrants. *Davis v. State*, 947 S.W.2d 240, 250 n.6 (Tex. Crim. App. 1997). The settled rule is that the investigative detention must be temporary and can last no longer than is necessary to effectuate the purpose of the stop. *Id*. at 245. However, once a police officer makes a good faith stop for a traffic offense, he may also investigate any other offense that he reasonably suspects has been committed. *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.). The State bears the burden of establishing the reasonableness of the detention. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

In this case, Wofford testified he detained Greer after the initial traffic stop was resolved based primarily on the informant's tip, including the facts that Greer was driving the vehicle the informant had reported and was in the area the informant had identified. Moreover, the area was known as one where drug activity occurred. Wofford testified he found the fact that Greer left

his vehicle and locked it to be suspicious, and the fact that he pulled into a driveway that was not his own to be suspicious as well.

When an informant brings unsolicited information to the police in a face-to-face encounter, the information should be given serious attention and weight by the officer, even if the informant did not identify himself or herself. *Bilyeu v. State*, 136 S.W.3d 691, 694–95 (Tex. App.—Texarkana 2004, no pet.); *State v. Garcia*, 25 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also Walker v. State*, 05-09-00139-CR, 2010 WL 522792, at *4 (Tex. App.—Dallas Feb. 16, 2010, pet. ref'd). The general rule is that "a stop based on facts supplied by a citizen-eyewitness, which are adequately corroborated by the arresting officer, do[es] not run afoul of the Fourth Amendment." *Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005). The officer does not have to observe the conduct personally to corroborate it; instead, the police officer "in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* at 259 n.5 (citing *Alabama v. White*, 496 U.S. 325, 330–31 (1990)). An informant's veracity, reliability, and the basis of his knowledge are all "highly relevant" in determining the value of his report. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). In this case, Greer was driving the vehicle described by the informant and was stopped just two houses away from the house identified as the location of drug activity by the informant. We conclude Wofford had confirmation of enough facts to conclude the information given to him was reliable. Thus, the temporary detention was justified after resolution of the traffic stop.[2]

And as to the length of the detention caused by the time for the drug dog to arrive, we do not conclude a time of approximately twenty-five minutes was unreasonable in this case. The

---

[2] We do not rely on the fact that Greer walked away from his truck and toward Wofford in our analysis of whether Wofford had reasonable suspicion. *See, e.g.*, *Davis v. State*, 947 S.W.2d 240, 248 (Tex. Crim. App. 1997) (Mansfield, J. concurring) (concluding fact appellant exited his car and approached officer's vehicle was "[f]ar from being suspicious," and instead showed "an intent to demonstrate he was neither dangerous nor drunk and his desire 'to make points with the police by coming to them instead of making them come to him.'").

record does not indicate Wofford used the waiting period to Greer's detriment in an unfair or unreasonable fashion. And twenty-five minutes is certainly not unreasonable as a matter of law. *See, e.g., Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007) (facts of case provided sufficient reasonable suspicion to detain appellant for twenty-five minutes it took for drug dog to arrive).

Based on our review of the totality of the circumstances, we conclude Woodruff possessed reasonable suspicion to detain Greer for an investigation of his involvement in drug possession or trafficking. Accordingly, the trial court did not err in denying Greer's motion to suppress on this issue. We overrule Greer's first issue.

## The May 2010 Arrest

In his appeal of the charge growing out of the May 2010 arrest, Greer contends that arrest was invalid because it was the result of the illegal search of his vehicle in January of that same year. Because we have concluded that Greer was not illegally detained or searched in the first arrest, we need not address this second issue.

## Inventory Search

Finally, in a third issue, Greer challenges the inventory search of his vehicle following the May 2010 arrest. Greer contends the State offered insufficient evidence of what the city's inventory-search policy was and that it was followed; he argues the inventory search was merely a ruse for searching his vehicle. Greer also argues he had a privacy interest in the locked briefcase found during the inventory search.

The purpose of an inventory is to protect the owner's property while it remains in police custody, to protect the police against claims or disputes over lost or stolen property, and to protect the police from potential dangers. *Kelley v. State*, 677 S.W.2d 34, 37 (Tex. Crim. App. 1984). An inventory search is reasonable under the Fourth Amendment so long as it is done as

part of standard police procedures and not done in bad faith or for the sole purpose of investigation. *Trujillo v. State*, 952 S.W.2d 879, 882 (Tex. App.—Dallas 1997, no pet.). Lane testified it was the McKinney Police Department's policy to tow the vehicle and to inventory its vehicle's contents beforehand. The record establishes that the vehicle was located in the driveway of a home that did not belong to Greer; thus, it was reasonable for the police department to have the car towed from that private property. *See Mayberry v. State*, 830 S.W.2d 176, 180–81 (Tex. App.—Dallas 1992, pet. ref'd). And Lane testified that he did in fact create an inventory; this was not just a ruse to search the vehicle. We conclude there was sufficient evidence of the policies underlying the inventory search. *See, e.g., Trujillo*, 952 S.W.2d at 882. (evidence sufficient when officer testified it was standard procedure to inventory contents of vehicle when the vehicle is turned over to wrecker).

As to the locked briefcase and Greer's privacy interest therein, the record indicates Lane handled that aspect of the search with an abundance of caution. When he smelled marijuana after opening the door of the vehicle, he stopped his own search and called the K-9 unit. When the dog alerted on the locked briefcase, Lane took it to headquarters and turned it over to Woodruff. Woodruff testified he intended to get a search warrant to open the case, but Greer admitted that it contained contraband. At that point, Greer no longer had any privacy interest in the case, and Woodruff had no need of a warrant. *See Rodriguez v. State*, 106 S.W.3d 224, 229 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("There is no legitimate expectation or interest in 'privately' possessing an illegal narcotic."). The trial court did not err in overruling this portion of the motion to suppress. We overrule Greer's third issue.

**Conclusion**

We have decided each of Greer's issues against him. We affirm the judgments of the trial court.


/David Lewis/

DAVID LEWIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47


120090F.U05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROD LEONARD GREER, Appellant

No. 05-12-00090-CR         V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-81410-10.
Opinion delivered by Justice Lewis.
Justices Moseley and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of April, 2013.

/David Lewis/

DAVID LEWIS
JUSTICE

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ROD LEONARD GREER, Appellant

No. 05-12-00091-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 416-82349-10.
Opinion delivered by Justice Lewis.
Justices Moseley and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of April, 2013.

/David Lewis/
DAVID LEWIS
JUSTICE